```
IN THE UNITED STATES DISTRICT COURT
  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ALJAMARIO WILLOUGHBY,           )
                                )
          Plaintiff,            )
                                )
     v.                         )    1:24cv662
                                )
CARLA WEST,                     )
                                )
          Defendant.            )
```

### MEMORANDUM OPINION AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Defendant's "Motion to Dismiss [Plaintiff's] Amended Complaint" (Docket Entry 14) (the "instant Motion"). For the reasons that follow, the Court will grant the instant Motion.[1]

### BACKGROUND

Aljamario Willoughby, Jr. (the "Plaintiff") initiated the instant action pro se against Carla West (the "Defendant"), "in her official capacity of [North Carolina Department of Health and Human Services ('NCDHHS')] Director of Region IV-D agency operating in this state as a business for profit." (Docket Entry 2 at 3 (all-caps font omitted); see also id. (describing Defendant "as director of the alone, detached, and disconnected business for profit operating in this state" (internal brackets and quotation marks

---

    1 Pursuant to the parties' consent, Senior United States District Judge Loretta C. Biggs referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 19 at 1.)

omitted)).)[2]  Defendant moved to dismiss the action (Docket Entry 10), after which Plaintiff filed an Amended Complaint (Docket Entry 13).  The Amended Complaint, which again names Defendant "in her capacity as director of the alone, detached, and disconnected IV-D agency" (Docket Entry 13 at 1 (all-caps font omitted)), provides scant factual context (see id. at 1-5), but appears to concern enforcement of a state child support order against Plaintiff in accordance with North Carolina's IV-D program (see Docket Entry 13-1 at 1 (referencing "IV-D Security Interest # 19CVD002537-8315503, which comprises the Cabarrus County district court case number and associated IV-D case number (see Docket Entry 15-1 at 1 (Cabarrus County District Court Child Support Order)))).[3]

Specifically, the Amended Complaint alleges that Defendant "provided a set of instructions to IV-D contractors and personnel to succeed Plaintiff to the status of non-custodial parent subjecting [him] to IV-D of the [Social Security] Act, by

---

[2] "Title IV-D of the Social Security Act require[s] States receiving federal child-welfare funds to substantially comply with requirements designed to ensure timely payment of child support." Gonzaga Univ. v. Doe, 536 U.S. 273, 281 (2002) (internal quotation marks omitted).  "The IV-D program was set up as an intergovernmental operation involving federal, state and local governments . . . . In most states, including North Carolina, the state department of social services . . . supervises the program and state and local enforcement agencies provide the services." Carter v. Morrow, 562 F. Supp. 311, 313 (W.D.N.C. 1983).

[3] As Defendant notes, the Court may "take[] judicial notice of [] publicly available child support case dockets." Alcurtis of the Fam. Robinson Jr. v. West through Region 4 IV-D Agency, No. 5:24CV458, 2025 WL 1508015 (E.D.N.C. May 27, 2025).

fraudulently identifying [him] by a social security number." (Docket Entry 13 at 2.) The Amended Complaint further alleges that Plaintiff "served [Defendant] with a notice . . . to terminate [his] involuntary participation in the IV-D program on the basis that there was a blatant error in the identity of the noncustodial parent and [his] identity provided by Article I Sec. 1 as a Genesis 1;26 man by nature equally free and independent." (Id.) Based on that notice, the Amended Complaint contends that Defendant "was authorized to terminate [Plaintiff's] involuntary participation [in the IV-D program] but chose not to" (id.), and thus "fail[ed] to act when there was a constitutional duty to act" (id.).

According to the Amended Complaint, Defendant's failure to terminate Plaintiff's participation in the IV-D program resulted in violations of his First, Fourth, Fifth, Seventh, Thirteenth, and Fourteenth Amendment rights (see id. at 3-4), for which he purports to assert claims pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and Title VII, 42 U.S.C. § 2000e et seq. (see id. at 1). Plaintiff also appears to contest the validity of the underlying child support order and the constitutionality of the IV-D program by alleging that "Title 42 of the U.S. Code . . . . has never been enacted into positive law" (id. at 3) and arguing that the "alleged IV-D court order fraudulently issued by the . . . Cabarrus County District Court was unconstitutional and invalid" (Docket Entry 17

3

at 4). For these alleged federal Constitutional violations, Plaintiff requests the following relief:

> 1. Award Plaintiff [] termination of [his] involuntary participation in the IV-D program;
>
> 2. Award Plaintiff [] zero dollar amount of arrears, removal from [his] credit history, and a full refund of $180,000.00 at 6% interest for monies exacted or obtained from [him] during [his] involuntary participation, and;
>
> 3. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 1st Amendment natural and inalienable rights and;
>
> 4. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 4th Amendment inalienable right to privacy, and;
>
> 5. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 5th Amendment inalienable right to due process, and [his] privilege against self-incrimination, and;
>
> 6. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 7th Amendment inalienable right to a trial by jury, and;
>
> 7. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 13th Amendment inalienable right against slavery and involuntary servitude, and;
>
> 8. Award Plaintiff [] $15,000.00 compensatory, punitive, and other damages against [Defendant] through the IV-D agency for deprivation of [his] 14th Amendment inalienable right to due process and denial of [his] right to equal protection of the laws, and;

> 9. Award Plaintiff [] reasonable legal fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 in the amount of $2,500.00 as the prevailing party.

(Docket Entry 13 at 4-5 (bold font omitted).)

In response to the Amended Complaint, Defendant filed the instant Motion requesting that the Court dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(1) and (6). (See Docket Entry 14 at 1; see also Docket Entry 15 at 5-12 (developing dismissal arguments).) Plaintiff responded in opposition (Docket Entry 17), and Defendant did not reply (see Docket Entries dated Jan. 9, 2025 through present).

## STANDARDS OF REVIEW

As an initial matter, Plaintiff proceeds pro se. "A document filed pro se is to be liberally construed," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal italics and quotation marks omitted), but "[t]he [C]ourt is not expected to advance a pro se litigant's claim or argument . . . . or become an advocate for the pro se litigant." Lindemann-Moses v. Jackmon, 669 F. Supp. 3d 517, 522 (M.D.N.C. 2023), aff'd, No. 23-1698, 2023 WL 8064711 (4th Cir. Nov. 21, 2023).

### A. 12(b)(1)

When a defendant moves to dismiss a complaint under Rule 12(b)(1) on grounds of lack of subject matter jurisdiction, the burden of proving subject matter jurisdiction ultimately rests with

5

the plaintiff.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The Court may grant a Rule 12(b)(1) motion to dismiss only where no dispute exists regarding the material jurisdictional facts, and the moving party demonstrates entitlement to prevail as a matter of law.  See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  "In determining whether jurisdiction exists, the [ C]ourt is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768 (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## B. 12(b)(6)

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff."  Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Md., 566 U.S. 30 (2012).  The Court must also "draw all reasonable inferences in favor of the plaintiff."

6

E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a "reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

### A. Section 1983 Claims

To the extent that the Amended Complaint brings claims for money damages against Defendant in her official capacity pursuant to Section 1983, Defendant correctly argues that the Court should dismiss such claims pursuant to Rule 12(b)(1) because "[t]he

7

Eleventh Amendment of the United States Constitution and the doctrine[] of sovereign immunity bar Plaintiff's claims against [Defendant]" (Docket Entry 15 at 5 (all-caps and bold font omitted)).  (See id. at 5-7.)  State sovereign immunity, while "sometimes referred to . . . as 'Eleventh Amendment immunity,'" Stewart v. North Carolina, 393 F.3d 484, 487 (4th Cir. 2005) (some internal quotation marks omitted), "neither derives from, nor is limited by, the terms of the Eleventh Amendment," id. (internal quotation marks omitted).  Rather, "[t]he Eleventh Amendment 'confirmed sovereign immunity as a constitutional principle,' and is 'but an example of state sovereign immunity.'" Quinn v. North Carolina Dep't of Health & Hum. Servs., No. 3:20CV169, 2020 WL 4468728, at *2 (W.D.N.C. Aug. 4, 2020) (internal ellipsis omitted) (first quoting Alden v. Maine, 527 U.S. 706, 728-29 (1999), then quoting Stewart, 393 F.3d at 488).  Such sovereign immunity "bars suits against nonconsenting States in a wide range of cases," Franchise Tax Bd. of Cal. v. Hyatt, 587 U.S. 230, 243-44 (2019), including cases brought pursuant to Section 1983, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-68 (1989). Consistent with that principle, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Id. at 71 (internal citation omitted).

The foregoing authority dooms Plaintiff's Section 1983 claims. To begin, "[NC]DHHS is a statutorily-created principal department contained within the executive branch of the State of North Carolina. Any money damages awarded against it would be drawn from the state treasury. Therefore, any claim against [NC]DHHS is a claim against the State of North Carolina." Quinn, 2020 WL 4468728, at *2 (internal citation omitted); see also N.C. Gen. Stat. § 143B-6 (denoting "Department of Health and Human Services" as "principal department" vested with "executive and administrative powers, duties, and functions").[4]

Notably, Plaintiff does not contest that Defendant works for NCDHHS. (See Docket Entry 17 at 8 (contending that "NC placed the IV-D agency 'within' the Department of Health and Human services umbrella agency" (italics omitted)).) Nor does the Amended Complaint allege that the state consented to waive its sovereign immunity. (See Docket Entry 13 at 1-4.) "[T]herefore, Plaintiff's

---

[4] Plaintiff appears to contend that the "IV-D agency," which he describes as "'*within*' [NCDHHS]" (Docket Entry 17 at 8 (emphasis in original)), "is not an arm of North Carolina" (id. (all-cap and bold fond omitted)), ostensibly because the federal government oversees state IV-D programs (see id.). However, federal courts in this state consistently agree that state sovereign immunity protects NCDHHS, including in IV-D-related cases. See, e.g., Alcurtis of the Fam. Robinson Jr. v. West through Region 4 IV-D Agency, No. 5:24CV458, 2025 WL 1508015, at *2 (E.D.N.C. May 27, 2025) ("Here, where [the] defendant is an employee of [NCDHHS], Eleventh Amendment immunity applies."); Quinn, 2020 WL 4468728, at *2 (holding sovereign immunity extends to NCDHHS as agency of state); Hawes v. Lee, No. 1:05CV134, 2005 WL 8165094, at *2 (M.D.N.C. Dec. 6, 2005) (same), recommendation adopted, No. 1:05CV134 (M.D.N.C. Feb. 17, 2006).

9

§ 1983 claim[s] for money damages against [] Defendant[] acting in [her] official capacit[y] must be dismissed . . . ." Mitchell v. Winston-Salem State Univ., No. 1:19CV130, 2020 WL 1516537, at *6 (M.D.N.C. Mar. 30, 2020).

Regarding any injunctive relief Plaintiff seeks pursuant to Section 1983, Defendant contends that the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. (See Docket Entry 15 at 8-10.) Derived from the Supreme Court's decisions in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), the Rooker-Feldman doctrine generally prohibits lower federal courts from reviewing state-court decisions. See Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997). "[R]ather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." Id.; see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (clarifying that the Rooker-Feldman doctrine bars a federal court from asserting jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments"). "[T]he Supreme Court made clear that federal jurisdiction is not barred by the Rooker–Feldman doctrine if suit was filed before the end of the state courts' appeal process." Dawkins v. Staley, No. 1:22CV299,

10

2023 WL 1069745, at *3 (M.D.N.C. Jan. 27, 2023) (internal quotation marks omitted).

To that end, "[Plaintiff] is subject to an ongoing child support order, which is to be monitored by the North Carolina state court system and is subject to modification at any time." Id. at *5 (citing Catawba Cnty. ex rel. Rackley v. Loggins, 370 N.C. 83, 88, 804 S.E.2d 474, 478 (2017), for proposition that "[a] judicial decree in a child custody and support matter is subject to alteration upon a change of circumstances affecting the welfare of the child and, therefore, is not final in nature," and N.C. Gen. Stat. § 50-13.7(a) (2021) ("An order of a court of this State for support of a minor child may be modified or vacated at any time.")). As "[Plaintiff's] state court proceedings have not concluded[,] accordingly, the Rooker-Feldman doctrine does not apply." Id. at *3.

Nevertheless, the Court should abstain from granting any injunctive relief sought "under the principles of federalism enunciated in Younger v. Harris, 401 U.S. 37 (1971)." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10 (1987).[5] As relevant here, the Younger abstention doctrine applies, inter alia, "to particular state civil proceedings . . . that implicate a State's interest in

---

[5] Although the parties did not address abstention, it "may be raised by the court sua sponte," Bellotti v. Baird, 428 U.S. 132, 144 n.10 (1976) (italics omitted); see also Dawkins, 2023 WL 1069745, at *3 n.5 ("Although abstention was not specifically addressed by the parties, the court may raise it sua sponte").

11

enforcing the orders and judgments of its courts." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013) (internal citation omitted). Such circumstances include "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 73.

As this Court has explained (per then-Chief United States District Judge Schroeder):

> The Younger inquiry proceeds in two steps. First, the [C]ourt considers whether the state proceeding at issue is one of the three types of proceedings that warrant Younger abstention: (1) an ongoing state criminal prosecution[ ], (2) certain civil enforcement proceedings that are akin to a criminal prosecution in important respects, and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. Second, if the proceeding fits into one of these categories, then abstention is appropriate if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

Dawkins, 2023 WL 1069745, at *3 (internal citations, ellipsis, and quotation marks omitted) (citing, inter alia, Sprint, 571 U.S. at 73, 78).

Beginning with step one, this case "involves a challenge to [the] third category of proceedings: pending state civil proceedings involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at *4

12

(internal quotation marks omitted). Specifically, Plaintiff's claims "implicate[] how North Carolina courts manage their own child support proceedings - a subject in which the states have an especially strong interest." Id. (citing Moore v. Sims, 442 U.S. 415, 435 (1979)). Plaintiff requests that the Court "terminat[e his] involuntary participation in the IV-D program" (Docket Entry 13 at 4) and "[a]ward [him a] zero dollar amount of arrears, removal [of the child support obligation] from [his] credit award history, and a full refund of $180,000.00 at 6% interest for monies extracted or obtained from [him] during [his] involuntary participation [in the IV-D program]" (id.), all of which would require the Court to "intervene in ongoing state judicial proceedings," Betts v. Armstrong, No. 1:25CV341, 2025 WL 1436051, at *4 (M.D.N.C. May 5, 2025), recommendation adopted, 2025 WL 1435105 (M.D.N.C. May 19, 2025), aff'd, No. 25-1607, 2025 WL 2438193 (4th Cir. Aug. 25, 2025). Indeed, Plaintiff asserts that "[t]he [Amended C]omplaint factually provides that the alleged IV-D court order fraudulently issued by the . . . Cabarrus County District Court was unconstitutional and invalid." (Docket Entry 17 at 4.) Such "state court orders [regarding child support and IV-D enforcement] undoubtedly qualify as being uniquely in furtherance of the state courts' ability to perform their judicial functions." Dawkins, 2023 WL 1069745, at *4 (internal quotation marks omitted); see also Harper v. Public Serv. Comm'n of W. Va., 396 F.3d 348, 352

13

(4th Cir. 2005) ("[E]nforcing state court judgments cuts to the state's ability to operate its own judicial system.").

Moving to step two of the <u>Younger</u> analysis, the Court must "consider[] the 'additional factors' laid out in <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 432 (1982)." <u>Dawkins</u>, 2023 WL 1069745, at *5. The record establishes that the first factor - "whether there is 'an ongoing state judicial proceeding,'" <u>Air Evac EMS, Inc. v. McVey</u>, 37 F.4th 89, 96 (4th Cir. 2022) (quoting <u>Middlesex</u>, 457 U.S. at 432) - supports abstention; as discussed, "[Plaintiff] is subject to an ongoing child support order, which is to be monitored by the North Carolina state court system and is subject to modification at any time." <u>Dawkins</u>, 2023 WL 1069745, at *5. The second <u>Middlesex</u> factor - "whether that state proceeding 'implicates important state interests,'" <u>Air Evac</u>, 37 F.4th at 96 (brackets omitted) (quoting <u>Middlesex</u>, 457 U.S. at 432) - likewise favors abstention. In that regard, "states have a recognized interest in ordering and enforcing child support obligations." <u>Dawkins</u>, 2023 WL 1069745, at *5 (internal quotation marks omitted) (collecting cases); <u>see also, e.g.</u>, <u>Harper</u>, 396 F.3d at 354 ("Interests like . . . family law . . . lie at the heart of state sovereignty, and a failure to abstain in the face of ongoing state proceedings [in that area] would disrespect the allocation of authority laid in place by the Framers."). Finally, the third <u>Middlesex</u> factor - "whether that

14

state proceeding provides 'an adequate opportunity to raise constitutional challenges,'" Air Evac, 37 F.4th at 96 (ellipsis removed) (quoting Middlesex, 457 U.S. at 432) - also supports abstention. To that end, "[t]he Supreme Court has made clear that, in the area of domestic relations, 'state processes are [equal] to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation.'" Dawkins, 2023 WL 1069745, at *5 (quoting Moore, 442 U.S. at 435). Accordingly, the instant case meets the requirements for Younger abstention.

"Even when[, as here,] the basic requirements for *Younger* abstention are present, there are a few carefully limited circumstances where a district court may disregard *Younger's* otherwise-ironclad mandate." Erie Ins. Exch. v. Maryland Ins. Admin., 105 F.4th 145, 151 (4th Cir. 2024) (internal quotation marks omitted). Specifically, "extraordinary circumstances may nevertheless allow federal court intervention if the state brought the action in bad faith or to harass, where the state statute is 'flagrantly and patently' unconstitutional, or where other 'extraordinary circumstances' exist that present a threat of immediate and irreparable injury." Dawkins, 2023 WL 1069745, at *3 (quoting Younger, 401 U.S. at 49-54). "[T]he path to extraordinary circumstances is exceedingly narrow," Air Evac, 37 F.4th at 100, and the Amended Complaint alleges no facts indicating such

15

extraordinary circumstances arose here.  First, the Amended Complaint lacks allegations that Defendant acted in bad faith or to harass Plaintiff; rather, the Amended Complaint alleges only that Defendant failed to act in accordance with a purported legal duty to terminate his participation in the IV-D program upon his request (see Docket Entry 13 at 2).

The Amended Complaint similarly fails to allege that Title IV-D of the Social Security Act qualifies as "flagrantly and patently" unconstitutional.  Regarding Title IV-D, Plaintiff asserts that "Title 42 of the U.S. Code is a non-positive law" (id. at 3) and that, because "[t]he Constitution identifies [him] as a Genesis 1;26 man by nature equally free and independent[,] . . . any government exercise of just powers requires [his] consent" (id. at 4; see also Docket Entry 17 at 9 (contending that "IV-D is nothing more than an interstate contract" and "in order to participate in the IV-D program Plaintiff would have to consent[] . . . and voluntarily 'enroll' in the IV-D program")). Those assertions provide "an invalid basis to avoid the law," Dawkins, 2023 WL 1069745, at *5 n.7 (addressing parallel allegation that Title IV-D "has never been passed into Positive Law and therefore imposes no obligation on anyone who does not volunteer to be subject to it").  See also Cruel-El v. South Carolina, No. 6:18CV1680, 2018 WL 3628844, at *4 (D.S.C. July 10, 2018) ("[The p]laintiff seems to allege that South Carolina does not have the

16

legal authority to issue and enforce child support orders because [the p]laintiff, as a sovereign citizen, has not consented to such actions. In addition to being patently frivolous, this contention misunderstands the authority of South Carolina, as a sovereign State, to enact legislation and enforce that legislation through the State's governing institutions." (internal citation omitted)), recommendation adopted, 2018 WL 3619798 (D.S.C. July 30, 2018), aff'd, 744 F. App'x 185 (4th Cir. 2018).

Finally, the Amended Complaint makes no allegations showing any "other extraordinary circumstances [] that present a threat of immediate and irreparable injury," Dawkins, 2023 WL 1069745, at *3. (See Docket Entry 13 at 1-5.) For all these reasons, Younger abstention requires dismissal of Plaintiff's federal claims with prejudice. See Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006) ("[W]hen a district court abstains from a case based on Younger, it should typically dismiss the case with prejudice; not on the merits, but instead because the court is denied the equitable discretion ever to reach the merits." (internal citation omitted)).[6]

---

[6] In the alternative, the Amended Complaint lacks sufficient factual allegations to state a plausible claim pursuant to Rule 12(b)(6). Plaintiff's only factual allegations consist of his mailing a letter to Defendant requesting she terminate his participation in the IV-D program (see Docket Entry 13 at 2; Docket Entry 13-1) and vague allegations that Defendant "identif[ied him] by a social security number" (Docket Entry 13 at 2), for which he provides no additional facts that would afford "the defendant fair
(continued...)

### B. Title VII Claim

In addition to the Section 1983 claims, the Amended Complaint alleges that "[t]his [C]ourt has [j]urisdiction under . . . Title VII." (Docket Entry 13 at 1.) Defendant correctly observes that "Plaintiff offers no facts to support [a Title VII] claim[]." (Docket Entry 15 at 8.) Title VII prohibits <u>employers</u> from discriminating against <u>employees</u> based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Amended Complaint lacks any allegations regarding an employer-employee relationship between Plaintiff and Defendant, Plaintiff's or Defendant's "race, color, religion, sex, or national origin," <u>id.</u>, or discrimination by Defendant against Plaintiff at all, let alone on any of those bases. (<u>See</u> Docket Entry 13 at 1-5.) Therefore, to the extent that Plaintiff purports to state a Title VII claim, such claim fails as a matter of law, necessitating dismissal.

### C. Fraud Claim

Finally, if the Amended Complaint asserts a claim for fraud based on Plaintiff's allegations that "[Defendant] through the IV-D agency provided a set of instructions to IV-D contractors and personnel to succeed Plaintiff to the status of non-custodial parent subjecting [him] to IV-D of the Act, by fraudulently identifying [him] by a social security number" (Docket Entry 13 at

---

6(...continued)
notice of what the claim is and the grounds upon which it rests," <u>Twombly</u>, 550 U.S. at 555. (<u>See</u> Docket Entry 13 at 1-5.)

2), that claim fails as a matter of law pursuant to Rule 12(b)(6), as Defendant contends (see Docket Entry 15 at 12). The Amended Complaint contains no factual allegations to support the conclusion that "[Defendant] fraudulently identif[ied Plaintiff] by a social security number" (Docket Entry 13 at 2). (See id. at 1-5.) Morever, as Defendant notes (see Docket Entry 15 at 12), for fraud claims, Rule 9(b) "requires that claimants plead fraud with particularity," Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999). In other words, Plaintiff must allege, inter alia, "the time, place, and contents of the false representations." Id. at 784 (internal quotation marks omitted). As the Amended Complaint lacks any such allegations (see Docket Entry 13 at 1-5), any fraud claim fails as a matter of law.[7]

## CONCLUSION

The doctrine of sovereign immunity bars Plaintiff's Section 1983 claims for money damages, and Younger abstention bars any such claim for injunctive relief. Further, to the extent Plaintiff

---

[7] Plaintiff additionally contends that "[i]t was illegal for [Defendant] to identify [Plaintiff] by [his] SSN" (Docket Entry 17 at 2), citing to the Social Security Administration's (the "SSA's") Program Operations Manual System, which the SSA's employees use to process claims, to argue that "SSN numbers cannot be used as evidence of [his] 'identity' or used to establish [his] identity" (id.). However, that document merely instructs the SSA's employees to "not issue a replacement SSN card, or assign a new SSN based on an old SSN . . . ." U.S. Social Security Administration, Program Operations Manual System (POMS), RM 10210.430 What Documents Are Not Evidence of Identity for an SSN Card (2023).

19

purports to assert a Title VII or fraud claim, the Amended Complaint lacks sufficient allegations to support those claims.

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 14) is GRANTED and this action is DISMISSED.

This 22nd day of September, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
